THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CHARLES R. BRADLEY, Defendant-Appellant.

Fourth District    No. 4—87—0604

Opinion filed July 21, 1988.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas K. Leeper, State's Attorney, of Quincy (Kenneth R. Boyle, Robert J. Biderman, and Michael K. Blazicek, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

The defendant Charles R. Bradley was charged with aggravated criminal sexual assault on December 19, 1986, under section 12–14(b)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 12–14(b)(1)). The complainant was an 11-year-old girl. After a jury trial, Bradley was convicted of the offense and sentenced to seven years' imprisonment. The defendant appeals from the judgment of the circuit court of Adams County. We reverse and remand.

On December 19, 1986, the defendant was charged with aggravated criminal sexual assault of the complainant between March 1 and August 1, 1986. On March 25, 1987, a hearing was held to determine the competency of the complainant to testify. Complainant was exam-

ined and cross-examined by counsel and a psychologist testified that complainant was mildly retarded. The court determined the complainant was a competent witness.

The evidence at trial was as follows.

The defendant, after a period of unemployment, was hired as a resident manager of a Home Individual Program (HIP) home in 1985. The home was operated by a private agency licensed by the State. The HIP homes were intended to provide an alternative to institutionalization for developmentally disabled children. The resident manager was responsible for all aspects of the children's care and was on duty five days a week, 24 hours a day. During the remaining two days each week and at other times when the resident manager had reason to be away from the home, a relief worker was present. Part of the duties of the manager and relief workers was to keep a detailed, daily record of each child's activities and to note any unusual behavior or activities. Each month a meeting with the resident manager, social workers, parents and other interested parties took place to discuss the activities and progress of each child. Defendant was resident manager of HIP home No. 1 until June 1986, when he took over a different HIP home. His daughter Mary Bradley became resident manager at HIP home No. 1 succeeding her father. Complainant was placed in the HIP home No. 1 in June 1985, and remained there at the time of her complaint in October 1986.

Mary Bradley testified she became aware of complainant's interest in sex and purchased a children's book and audio cassette explaining the difference between bad and good "touches." Lynn Loatsch, the complainant's teacher, testified the complainant brought this audio cassette to her and asked her to listen to it. After doing so, Loatsch testified the complainant stated she received "bad touches" from the defendant and indicated these "touches" took place in the vaginal area.

The complainant was able to testify to her age and birthday and that she had lived with the defendant and his wife. She was unable to identify the defendant after walking around the courtroom while he was present. She stated the defendant was nice to her and they were friends. She also testified the defendant had come into her bedroom at the HIP home, would lay on top of her, place his "thing" in her private parts, and then on one occasion she felt some yellow sticky stuff. Complainant further stated these incidents occurred when defendant's wife was not in the house and defendant instructed her not to tell anyone about the incidents. The complainant was unable to testify as to the exact number of incidents.

The parties engaged in a *voir dire* of Pat Hancox, a child abuse investigator with the Department of Children and Family Services (DCFS). After refusing to qualify her as an expert on any syndrome of child abuse, the court accepted her as an expert on the characteristics of child abuse perpetrators and victims. At trial, she was allowed to testify as to these characteristics.

A gynecologist, Dr. Dureska, who had examined the complainant, gave expert testimony as to her physical condition. While her general physical condition was consistent with her age, her hymen was disrupted and a vaginal examination revealed its condition was similar to that of a sexually active married woman. The doctor confirmed that self-manipulation or sexual abuse were both possible explanations for this condition.

The defendant's wife, Nola Bradley, testified she had volunteered to act as a foster mother to the children at the HIP home and lived at the home during the times when her husband was on duty. During much of the period she was employed outside the home during the day but testified that only during a period of 1½ weeks in March 1986 was she gone from the home at night.

Several witnesses testified the complainant had a continuing problem with bed-wetting and there were several incidents of masturbation. When confronted by the absence of any record of the masturbation in the daily record, they indicated they had been told by social workers to downplay such behavior and had not recorded it.

The jury convicted the defendant and he was sentenced to seven years' imprisonment by the trial court.

The State contends the defendant is foreclosed from raising any objection on appeal to testimony admitted under the spontaneous declaration exception. The State argues there was no objection raised at trial or in post-trial motions to the testimony admitted and on appeal this issue is waived.

The court granted a motion *in limine* on this issue. When it did so, it was given to believe by the State the evidence of the complainant and Lynn Loatsch would be admitted under the spontaneous declaration hearsay exception and the State would be able to lay a foundation showing the requirements of this exception had been met. With this reservation, the court properly overruled the objection of defense counsel to the admission of this testimony when considered at a pretrial motion hearing.

■ At trial, the State failed to make any showing of spontaneity. The requirements are (1) an occurrence sufficiently startling so as to produce a spontaneous and unreflecting statement; (2) absence of time

to fabricate; and (3) the statement must relate to the circumstances of the occurrence. *People v. Robinson* (1978), 73 Ill. 2d 192, 199, 383 N.E.2d 164, 168.

The State was able to show the complainant listened to a tape recording about good and bad "touches" for two months and eventually this led her to report the assault to her teacher, Lynn Loatsch. The State did not show a startling occurrence. Further, it was never able to make a temporal connection between any of the assaults and the complaint. It was thus unable to demonstrate the absence of time to fabricate which is an essential element of this exception.

■ The State has noted the failure of defense counsel to raise timely objection to the admission of this testimony. Though the record indicates there was considerable confusion concerning evidentiary rules at pretrial hearings and at the trial, the court in its ruling *in limine* made clear it expected the testimony of Lynn Loatsch and complainant to be admitted as spontaneous declaration evidence. Defense counsel had every reason to raise objections to the admission of this evidence at trial but did not. The State argues this is waiver which will bar consideration of this issue on appeal. Failure to raise an issue at trial and in post-trial motions constitutes waiver of the issue absent plain error. *People v. Enoch* (1988), 122 Ill. 2d 176, 185-86.

■ In this case we find there was such error. To be plain error it must affect the substantial rights of the defendant or the evidence in the case must be closely balanced. (*People v. Griffiths* (1983), 112 Ill. App. 3d 322, 445 N.E.2d 521.) There can be no doubt the right to have a case heard by a jury unprejudiced by improperly admitted evidence is such a substantial right. The testimony admitted here under the spontaneous declaration exception contained details and repeated identification of the defendant which were highly prejudicial. Since they were admitted under an exception to the hearsay rule for which there was absolutely no foundation, there was plain error.

■ Defendant has also pointed out the admission of impermissible details and identification of defendant in testimony admitted under the corroborative complaint provisions of section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 115—10). This section is intended only to provide corroboration a complaint was made and any details beyond those necessary to corroborate the complaint or any identification of the defendant is impermissible. (*People v. Server* (1986), 148 Ill. App. 3d 888, 499 N.E.2d 1019, *cert. denied* (1987), 484 U.S. 842, 98 L. Ed. 2d 88, 108 S. Ct. 131; *People v. Sexton* (1987), 162 Ill. App. 3d 607, 515 N.E.2d 1359.) In *Server,* this court held although such details and identification were impermis-

sible, their admission would be harmless error where substantially corroborated by the child or other evidence and where the child is available for cross-examination. *Sexton* limited the application of this rule where there already existed a strong possibility of jury prejudice and held that in such a case improper admission of identification testimony would not be harmless.

Though close on its facts to *Server*, the error here was not harmless. While the complainant here testified, was cross-examined and there was corroborative evidence, the improper admission of evidence under the spontaneous declaration exception discussed above greatly increased the chance of improper prejudice against the defendant. Rather than a few isolated comments, which could be considered harmless because of complainant's testimony as in *Server*, in this case there was repeated improper identification of defendant and continual improper repetition of details throughout the testimony. The errors are particularly egregious where considerable time at pretrial hearings was devoted to evidentiary matters, and the prosecutor nonetheless disregarded the guidelines established by the court and had to be repeatedly warned about overstepping them. For this reason we feel this case more properly comes under our decision in *Sexton* and the errors here cannot be considered harmless.

■ Defendant next raises the matter of the qualification of the social worker Pat Hancox as an expert. Generally qualification of an expert is within the broad discretion of the court and will not be disturbed absent an abuse of discretion. (*Server*, 148 Ill. App. 3d 888, 499 N.E.2d 1019.) In this case the court refused to qualify Pat Hancox, a child abuse investigator for the Department of Children and Family Services, to testify on the existence or nature of any syndrome concerning child abuse or its characteristics. The trial court did qualify her as an expert witness as to the general symptoms of child abuse victims and the general characteristics of perpetrators of child abuse. Defendant objected in both cases as to her qualifications.

■ The trial court correctly stated the indicia of expertise is not a given level of academic qualification, but whether the expert has knowledge and training beyond the average citizen which would assist the jury in evaluating the evidence. (*People v. Jordan* (1984), 103 Ill. 2d 192, 469 N.E.2d 569.) This court has recently upheld the qualifications of an expert witness where there was no established field of expertise but where the witness had considerable experience in that field. (*Server*, 148 Ill. App. 3d 888, 499 N.E.2d 1019.) In a case even closer to the one before this court, a child protective investigator from DCFS was allowed to testify as to whether the accused's family

fit the characteristics of families where child abuse typically occurred. (*People v. Wilder* (1986), 146 Ill. App. 3d 586, 496 N.E.2d 1182.) Under these precedents the trial court was correct in qualifying Pat Hancox as an expert for the limited purposes delineated by the court. Hancox received formal training in sociology and psychology and had extensive experience in dealing with child abuse cases. She clearly had knowledge and training beyond that of the average citizen in regard to cases of child abuse.

The defendant has also raised questions as to the relevance of the expert testimony of the DCFS investigator Pat Hancox. She was qualified as an expert and gave testimony as to the characteristics of child abuse perpetrators and symptoms of child abuse victims. Her testimony consisted of a recitation of these characteristics and symptoms but no attempt was made to connect these characteristics with the defendant.

■ In general, evidence is relevant where the fact or circumstances offered tend to prove or disprove a disputed fact or to render the matter in issue more or less probable. (*People v. Jones* (1982), 108 Ill. App. 3d 880, 884, 439 N.E.2d 1011, 1015.) Expert testimony that is probative and relevant should be allowed. (*People v. Henne* (1988), 165 Ill. App. 3d 315, 518 N.E.2d 1276.) This is not to say any relevant testimony is automatically admissible. There must be a balancing between the probative weight of the evidence and any unfairly prejudicial effect it might have. Only when the probative weight overcomes possible prejudice should the evidence be allowed. (*People v. DeHoyos* (1976), 64 Ill. 2d 128, 355 N.E.2d 19.) The court and prosecution are under a duty to avoid the introduction of evidence where its probative value is substantially outweighed by the danger of unfair prejudice. The standard of review is abuse of discretion. *People v. Groleau* (1987), 156 Ill. App. 3d 742, 509 N.E.2d 1337.

■ In this case there was an understanding between the court and counsel, Pat Hancox would testify only as an expert and would not attempt to connect the defendant with the characteristics she testified to though she had acted as the DCFS investigator in complainant's case. As a result, the jury was presented with a list of characteristics said to be typical of perpetrators of child sexual abuse. The testimony was doubly prejudicial because not only was the original decision to allow the expert testimony on the characteristics of child abuse perpetrators improper, but the refusal to allow any connection to the defendant only compounded the error. The admission of the testimony here was analogous to the admission of evidence of past conduct to show the propensity of a defendant to commit the crime

charged. The purpose of the testimony of the expert here was to show a propensity to commit the crime. Evidence offered for this purpose is inadmissible. (*People v. King* (1979), 67 Ill. App. 3d 754, 384 N.E.2d 1013.) The trial court's refusal to allow any testimony linking the defendant to the characteristics only exacerbated the problem. It left the jury to speculate as to whether the defendant conformed to the very general profile presented in the testimony. This also freed the State from any burden of showing how the defendant conformed to this profile while denying the defendant any opportunity to defend against the general implication of guilt created. In this way, the testimony of the expert was not only unfairly prejudicial to the defendant but also in no way probative or relevant to the question of whether the defendant had committed the crime. The trial court abused its discretion in admitting this evidence. For this reason and the other reasons stated above, we reverse and remand.

Reversed and remanded.

GREEN, P.J., and LUND, J., concur.