THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD HICKS, Defendant-Appellant.

First District (1st Division)   No. 1—88—0978

Opinion filed May 15, 1989.

Allan A. Ackerman, P.C., of Chicago (Allan A. Ackerman, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Linda Woloshin, and Scott Lane, Assistant State's Attorneys, of counsel, and Michael Brychell, Law Student), for the People.

JUSTICE QUINLAN* delivered the opinion of the court:

Defendant, Richard Hicks, was arrested and charged by information with possession of a controlled substance, cocaine, with intent to deliver. (See Ill. Rev. Stat. 1985, ch. 56½, par. 1402.) Prior to his trial in the circuit court of Cook County, the defendant filed a motion to suppress the evidence seized at the time of his arrest. The trial court

---

*Justice Quinlan participated in this decision prior to his assignment to the sixth division.

denied defendant's motion, and his case then proceeded to trial before a jury. The jury found defendant guilty, and the trial court sentenced him to eight years in the Illinois Department of Corrections. Defendant then appealed his conviction and sentence to this court.

On January 23, 1987, the trial court held a hearing on defendant's motion to suppress evidence and to quash his arrest. The defendant called Detective Thomas Kinsella to testify at that hearing. Kinsella was a Chicago police officer for 23 years and worked in the narcotics division for 15 years. At the time of defendant's arrest, Kinsella was working in the Chicago police department's drug enforcement administration task force at O'Hare Airport and had been working this detail for seven years. Kinsella's job was to monitor airline flights which originated in source cities and observe the demeanor of the deplaning passengers, their physical descriptions, their clothing, their actions, and their manner of leaving the airport.

Kinsella described the defendant's arrest and the events preceding it. He said he first saw the defendant when the defendant exited a plane at O'Hare Airport at approximately 8:15 p.m. on July 16, 1986, from a flight that had originated in Orlando, Florida, a source city for narcotics. Kinsella noticed that defendant carried two new suitcases, was wearing a number of gold bracelets and rings, and had on a new T-shirt, new shorts and a pair of high-top gym shoes without socks. The defendant began walking in the direction of the baggage claim area, but looked back over his shoulder at least two times and then stopped and entered the men's room.

Kinsella discussed the defendant's behavior with another narcotics agent, Al Fulkerson, and, following this discussion, Kinsella decided to follow the defendant. When the defendant left the men's room, he continued to walk toward the baggage claim area but again looked back over his shoulder. When defendant began walking away from the baggage claim area without retrieving any luggage, Kinsella and Agent Joe Gorzkowski walked up alongside the defendant. When Kinsella spoke to the defendant, Gorzkowski merely stood nearby. Kinsella identified himself as a police officer and asked defendant if he could speak with him. The defendant said "Sure" and stopped walking. Kinsella asked the defendant for some identification and for a copy of his airline ticket. The defendant said he had no identification but gave Kinsella a payment receipt for a traffic ticket. This receipt, however, did not have a name or date on it. The defendant's plane ticket was a one-way ticket from Orlando to Chicago and had been paid for that same day in cash. The defendant told Kinsella that he was unemployed and lived at 660 West Division, which Kinsella knew

to be a building in the Cabrini-Green housing project. Hicks also said that he had driven down to Florida with a friend for one day and had flown back. Up to this point, Kinsella had not told the defendant why he was being questioned.

Immediately after this conversation, Kinsella advised the defendant that they were conducting a narcotics investigation, but Kinsella did not tell the defendant that he was under arrest and instead told the defendant that he was free to leave if he wanted to do so. Kinsella next asked Hicks if he would consent to a search of the two bags he was carrying and also told the defendant that he did not have to consent to the search. The defendant responded, "Yes—go ahead."

The search of the defendant's luggage was conducted near the baggage claim area, which was not isolated or removed from the public area of the airport. In the first bag, Kinsella found a small brown glass vial with a spoon attached to the cap. Kinsella knew that vials such as this were commonly used to carry approximately one gram of cocaine. The spoon on the cap of the vial was used to snort the cocaine. Kinsella asked the defendant if he had anything to go with the vial and the defendant replied no.

Kinsella then began to search the second bag. At this point, the defendant became nervous and took several steps backward. Inside the bag was a gift-wrapped package. When Kinsella removed the package from the bag, the defendant exclaimed, "I don't know what is in the package, I have never seen that package, that didn't come out of my suitcase." Kinsella told the defendant that he was going to open the package very carefully and would then rewrap it. The defendant did not respond. As Kinsella did so, he found a taped package inside the wrapped package. Kinsella said that the manner in which this package was taped was similar to other packages he had seized which were found to contain a kilo quantity of cocaine. Kinsella stuck his knife into the taped package and saw white powder, which he believed to be cocaine. At this point, the defendant was arrested. It was later determined that the package in fact contained a kilo of cocaine. Kinsella said that he was wearing plain clothes at the time of the defendant's arrest and never displayed his weapon, raised his voice or blocked defendant's movement.

The defendant also called Officer Joseph Gorzkowski to testify. Gorzkowski was with Kinsella when the defendant was arrested and, at that time, had been a Chicago police officer for 9½ years. Gorzkowski's testimony corroborated Kinsella's testimony concerning the arrest of the defendant and the events surrounding the arrest.

The defendant then testified in his own behalf. The defendant's

account of his arrest and the events preceding it differed from Kinsella's version. The defendant said that he was arrested on July 16, 1986, at O'Hare Airport. The defendant stated that a man came up to him and asked to talk with him after he arrived in Chicago from Orlando, Florida, and told him that he was a police officer. The defendant identified the officer that came up to talk to him as Gorzkowski, and the officer who remained silent as Kinsella. The defendant stopped to talk to the officer because he "knew there was nothing [he] could do but stop." Hicks said that Gorzkowski asked him his name and whether he was a "citizen" of Chicago, to which Hicks replied that he was a citizen and gave his name. Hicks said that Gorzkowski did not ask him any more questions and that Gorzkowski and Kinsella then made him step behind a screen, in an isolated area. When the officer asked to search defendant's bags, defendant testified that he again said nothing because, Hicks said, there was nothing he could say. The defendant further testified that the officers did not take anything out of the first bag that they searched, but took a gift-wrapped package out of the second bag. Gorzkowski, according to the defendant, then said he was going to cut the package open and see what was in there. Defendant said nothing. Gorzkowski cut the package open and arrested the defendant.

Following the presentation of this testimony, the trial court deferred ruling on the defendant's motion. Later, on March 24, 1987, the State and the defendant presented further arguments on defendant's motion to suppress evidence and to quash his arrest. The court found that the officers' actions were proper when they walked up to the defendant and asked to speak with him. The court also found that the defendant consented to the search of his luggage, but held that defendant's consent had not extended to cutting open the gift-wrapped package. Nevertheless, the court did not grant defendant's motion. Rather, the court stated that it wanted the parties to address another issue and asked the State and the defendant to present evidence on the issue of inevitable discovery and whether, under that theory, the officers had the right to the contents of the gift-wrapped package after they discovered the cocaine vial.

On May 1, 1987, further testimony was received on defendant's motion. The court held that the State had sustained its burden of proving inevitable discovery. The court said that even though the defendant did not consent to the search of the gift-wrapped package, the officers at that time had the right to seize the bag and could have used a narcotics dog to inspect the bag and, accordingly, would have inevitably discovered the cocaine. The court reasoned that the officers

had reasonable grounds for seizure of the bag based on their discovery of the cocaine vial, the defendant's conduct and manner of dress, the airline ticket, which had been purchased that day in cash, and the fact that defendant had no identification. Thereafter, the trial court denied defendant's motion to suppress evidence and quash his arrest.

Subsequently, the defendant's case proceeded to trial. At trial, defendant claimed that a stranger approached him at the Orlando Airport and offered him $300 to take the bag containing the gift-wrapped package to Chicago. The defendant testified that he had agreed to take the bag, but he did not know, nor did he suspect, that the bag contained cocaine. Defendant also said that he did not intend to deliver cocaine to anyone. The jury found the defendant guilty of possession with intent to deliver, and the trial court denied defendant's request for post-trial relief. As noted earlier, the defendant then filed this appeal.

Defendant's first argument on appeal is that the trial court committed prejudicial error when it denied his motion to suppress. Hicks claims that the trial court made three errors in ruling on this motion. First, he claims that he, himself, was illegally seized when the officers began questioning him at the airport and, therefore, it was error for the trial court to hold that this questioning was lawful. This questioning, he asserts, amounted to an illegal seizure since he did not feel free to leave, and because the officers had no articulable suspicion that a crime had occurred when they began questioning him.

In support of his argument, defendant cites *People v. Blevins* (1983), 118 Ill. App. 3d 221, 454 N.E.2d 802, *People v. Steckhan* (1983), 116 Ill. App. 3d 173, 452 N.E.2d 122, *People v. Kiser* (1983), 113 Ill. App. 3d 501, 447 N.E.2d 858, and *People v. DeLisle* (1982), 104 Ill. App. 3d 297, 432 N.E.2d 954. Under these cases, the defendant argues, a "drug courier profile" such as that used by the officers here, cannot justify an airport stop because the mere profile itself does not create an articulable suspicion that a crime has occurred. He contends that the only basis for the officers stopping and questioning him was their belief that he fit this "drug profile." This, the defendant asserts, as in the cited cases, was not a sufficient basis.

The State responds that the encounter between the officers and the defendant was a consensual encounter and not an illegal seizure. Thus, the State claims, whether the defendant felt he was free to leave or whether the officers had an articulable suspicion that a crime had occurred is irrelevant. The test, the State argues, is whether the interaction between the officer and the individual exceeded the permissible level of a consensual inquiry in a public place, *i.e.*, whether a

reasonable person would have felt free to leave.

■■ Illinois, as the State correctly observed, has adopted the *Mendenhall* test, which holds that a person is seized only when his freedom of movement is restrained by means of physical force or a show of authority such that a reasonable person would believe that he was not free to leave. (See *United States v. Mendenhall* (1980), 446 U.S. 544, 553-54, 64 L. Ed. 2d 497, 509, 100 S. Ct. 1870, 1877.) In *People v. Forrest* (1988), 172 Ill. App. 3d 385, 526 N.E.2d 616, this court noted that those Illinois cases which had previously declined to follow *Mendenhall*, including the cases relied upon by the defendant here, had done so on the basis of what was now an outdated analysis. The courts in the cases which had declined to follow *Mendenhall* did so because only one other Justice of the Court in *Mendenhall* had concurred with Justice Stewart's opinion regarding the seizure issue. (See *Forrest*, 172 Ill. App. 3d at 391, 526 N.E.2d at 619.) However, as this court noted in *Forrest*, a majority of the Supreme Court Justices later, in *Florida v. Royer*, had elected to follow the seizure analysis set forth in *Mendenhall*. (See *Florida v. Royer* (1983), 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319.) Consequently, our court in *Forrest* then held that those Illinois cases decided before *Royer*, including the cases cited by defendant, were no longer persuasive authority. *Forrest*, 172 Ill. App. 3d at 391, 526 N.E.2d at 619.

■■ Thus, applying the *Mendenhall* test to this case, we hold here that the trial court correctly ruled that the encounter between the defendant and the officers was merely a consensual interaction. In *Mendenhall*, the Court listed examples of situations where a party might reasonably believe that a seizure had taken place. These situations were described as those where there was "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." (*Mendenhall*, 446 U.S. at 554, 64 L. Ed. 2d at 509, 100 S. Ct. at 1877.) Here, only one officer questioned the defendant while another stood nearby, both officers were dressed in plain clothes, neither officer displayed his weapon, neither officer touched the defendant, and neither officer raised his voice or indicated that the defendant had no choice but to comply with them. Hence, we find that under the *Mendenhall* test, there was no seizure in the present case.

At oral argument, the defendant contended that the reasoning of the Ninth Circuit Court of Appeals in *United States v. Sokolow* (9th Cir. 1987), 831 F.2d 1413, was applicable to this case. In *Sokolow*, the

Ninth Circuit reversed a drug conviction that resulted from an airport stop, finding that merely because Sokolow had fit the drug courier profile, the agents there did not have a reasonable suspicion to stop him. (*Sokolow*, 831 F.2d at 1422-23.) The court held that the drug courier profile was, by itself, insufficient to justify a stop, unless the officers also possessed evidence of ongoing criminal behavior. (*Sokolow*, 831 F.2d at 1421.) The defendant argues, that, like the officers in *Sokolow*, the officers here who stopped him did not have evidence of ongoing criminal behavior and, accordingly, were not entitled to stop him merely because he fit the drug courier profile.

First, we note that since oral argument was held in this case, the United States Supreme Court has reversed the Ninth Circuit's decision in *Sokolow*. (*United States v. Sokolow* (1989), 490 U.S. ____, 104 L. Ed. 2d 1, 109 S. Ct. 1581.) The Supreme Court held that although any one of the drug courier profile factors alone would not justify a stop, when all of them were combined, the factors did justify a reasonable suspicion of criminal activity there.[1] (*Sokolow*, 490 U.S. at ____, 104 L. Ed. 2d at 12, 109 S. Ct. at 1586.) The Supreme Court specifically found that "the fact that these factors may be set forth in a 'profile' does not somehow detract from their evidentiary significance as seen by a trained agent." (*Sokolow*, 490 U.S. at ____, 104 L. Ed. 2d at 12, 109 S. Ct. 1587.) The Supreme Court further found that an officer also need not use the least intrusive means to stop a suspected drug courier and, hence, the fact that the officers there grabbed Sokolow by the arm and moved him back onto the sidewalk as he was about to hail a cab did not, somehow, turn the stop into an impermissible seizure. (*Sokolow*, 490 U.S. at ____, 104 L. Ed. 2d at 12, 109 S. Ct. at 1587.) Thus, the *Sokolow* decision, as now decided by the Supreme Court, does not support defendant's position here, but instead, supports the propriety of the actions of the officers in stopping the defendant in this case. In any event, our basis for upholding the actions of the officers here was not grounded upon a finding of reasonable suspicion, but was based on a second ground, *i.e.*, that the stop was consensual. Since it was consensual, the issue of the legality of any seizure, no matter how limited, is essentially irrelevant.

---

[1]The drug courier characteristics observed in *Sokolow* were that the defendant paid $2,100 in cash for two airline tickets from a roll of $20 bills containing approximately twice the amount of the ticket; Sokolow flew from Honolulu to Miami, a 20-hour flight, and stayed in Miami for only 48 hours; Miami was a source city; the name Sokolow was traveling under did not match the name that his telephone number was listed under; Sokolow appeared nervous; and Sokolow did not check any of his luggage.

Defendant next claims that the trial court wrongfully denied his motion to suppress because the court erroneously held that he had also consented to the search of the gift-wrapped package. Defendant argues that he could not have given effective consent to this search since, as he again asserts, the initial encounter with the officers constituted an illegal seizure. The State, on the other hand, argues that since the encounter between the officers and the defendant was consensual, the defendant was not coerced into giving his consent to search the package and, therefore, the consent was valid.

■■ Inasmuch as we have found, as stated above, that the initial encounter between the defendant and the officers was a valid, consensual encounter, any consent of the defendant to the search of the second bag was, of course, an effective consent. We recognize that the trial court had initially denied defendant's motion to suppress and ruled that, even though the defendant had consented to a search of his luggage, his consent did not extend to the gift-wrapped package. But the trial court in its post-trial order made it clear that it had erred when it ruled that the defendant did not consent to a search of the gift-wrapped package, and the court thus substituted a new finding, that the defendant had consented to the search, for its original finding made at the time of the motion to suppress. Hence, any error by the court concerning the defendant's consent to search the package here was, if prejudicial, prejudicial to the State and not to the defendant.

The defendant also contends in his arguments here that the trial court erroneously ruled that the inevitable discovery rule applied. The defendant claims that the inevitable discovery rule can only be predicated on a lawful act and, because, as defendant has argued throughout his appeal, he was illegally stopped by the officers, there could be no lawful act upon which to predicate this rule.

■■ The inevitable discovery rule is an exception to the exclusionary rule and applies if the State can establish by a preponderance of evidence that the challenged evidence would have ultimately or inevitably been discovered through lawful means. (*People v. Faysom* (1985), 131 Ill. App. 3d 517, 526-27, 475 N.E.2d 945, 953.) In such a case, the challenged evidence may be used against the accused. (*Faysom*, 131 Ill. App. 3d at 527, 475 N.E.2d at 953.) Here, contrary to defendant's allegations, we found that the officers' actions were lawful and, thus, the inevitable discovery rule here was in fact founded upon a lawful act.

Defendant, however, argues additionally in this appeal that the trial court, nonetheless, erred by *sua sponte* raising this issue of inevi-

table discovery. He contends that by doing this the trial court impermissibly acted as prosecutor since the issue of inevitable discovery had not been raised by the State.

The State submits that the court did act impartially in raising the issue. The State argues that the judge properly raised the issue and that, in any event, the defendant was not harmed by this action because the court provided the defendant with an opportunity to respond to the issue.

■ A trial judge abuses his discretion when he abandons his judicial role and adopts the role of prosecutor. (*People v. McGrath* (1967), 80 Ill. App. 2d 229, 236, 224 N.E.2d 660, 664.) Nevertheless, a trial judge has a duty to see that justice is done, and if it appears that justice will fail because a fact has not been developed or a line of inquiry has not been pursued, the judge has a duty to intervene either by suggestions to counsel or by his own inquiry or examination of witnesses, if necessary, and, so long as he does not forget his role as judge in doing so, his actions are proper. *People v. Walter* (1980), 90 Ill. App. 3d 687, 688, 413 N.E.2d 542, 543.

■ We find that the trial judge here did not improperly act as a prosecutor when he *sua sponte* raised the issue of inevitable discovery. This situation is dissimilar to that in *People v. McGrath*, relied upon by defendant, where the trial judge examined a witness himself, and in the course of that examination, elicited incompetent hearsay testimony. (*McGrath*, 80 Ill. App. 2d 229, 224 N.E.2d 660.) In this case, the judge merely raised the inevitable discovery issue and gave both parties ample time to brief the issue. In raising this issue, we do not find that the trial judge abandoned his role as judge and became an advocate. We believe the judge properly fulfilled his duty to see that justice was done.

Defendant's last issue on appeal is that he was denied a fair trial because, he says, the trial judge allowed the State to introduce impermissible evidence of another offense at his trial. Defendant claims that the trial judge erroneously permitted the State to admit the cocaine vial into evidence, contending that the vial was irrelevant to the charge of possession with intent to deliver.

The State first contends that the defendant waived this issue on appeal because he did not object to the introduction of the evidence in the trial court. Alternatively, the State asserts that the trial court properly admitted the vial into evidence because it was part of the *res gestae* of the crime and was also proper as evidence of the defendant's guilty knowledge.

■■ We note that, as the State has contended, the defendant

did not object at trial to the admission of the vial on the ground that he now proffers, *i.e.*, that it was improper evidence of another offense. The defendant's only objection at trial to the vial was based on a chain of custody argument. The first time the defendant objects to the vial's admission as improper evidence of other offenses is in this court. The law in Illinois is clear that a party must make both a trial objection and a written post-trial motion raising an issue to preserve an error for review, when the alleged error could have been raised during trial. (*People v. Enoch* (1988), 122 Ill. 2d 176, 186, 522 N.E.2d 1124, 1130.) Here, since defendant could have raised this objection in the trial court and did not, we find that he has waived the issue on appeal.

■ ■ However, assuming *arguendo* that the issue was not waived on appeal, we believe that the admission of the vial into evidence did not amount to prejudicial error. We agree with the State's argument that the vial was part of the *res gestae* of his arrest for the crime of possession with intent to deliver. Evidence of other offenses may be admissible as part of the *res gestae* of the crime for which a defendant stands charged when the other offenses are introduced as part of the continuous narrative of events leading up to the defendant's arrest. (*People v. Demeron* (1987), 153 Ill. App. 3d 440, 444, 505 N.E.2d 1222, 1224-25.) At a defendant's trial, John Meyers, a forensic chemist for the Federal Drug Enforcement Administration, testified that the vial tested positively for the presence of cocaine. Furthermore, Officers Kinsella and Gorzkowski testified that they discovered the vial as they were searching defendant's bags and that the discovery of the vial further aroused their suspicions that the defendant was carrying drugs, because they knew that vials such as this were used to hold cocaine. Accordingly, we find that the vial could properly be admitted into evidence as part of the *res gestae* of possession with intent to deliver, since it was part of the narrative of the events leading up to defendant's arrest.

■ Finally, we also find that any error that may have occurred by the admission of the vial into evidence did not amount to reversible error. Where an allegedly erroneous admission of evidence of other crimes is unlikely to have contaminated the jury, the error is harmless and may be disregarded. (*People v. Richardson* (1988), 123 Ill. 2d 322, 343, 528 N.E.2d 612, 619.) In the *Richardson* case, our supreme court held that the admission of evidence of another crime did not amount to reversible error when there was no "extensive discussion" of the other crime. (*Richardson*, 123 Ill. 2d at 343, 528 N.E.2d at 619.) Here, as in *Richardson*, there was no extensive discussion of the co-

caine vial, and there was sufficient other evidence to warrant the defendant's conviction. After reviewing the record, we conclude that the jury would have reached the same verdict even if the vial had not been introduced into evidence. Therefore, we find the admission of the vial was harmless and did not deprive the defendant of a fair trial.

For all of the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

MANNING, P.J., and O'CONNOR, J., concur.