*In re* B.J.S., a Minor (The People of the State of Illinois, Petitioner-Appellee, v. B.J.S., Respondent-Appellant).

Fourth District   No. 4—86—0456

Opinion filed February 4, 1987.

Daniel D. Yuhas and Patricia G. Mysza, both of State Appellate Defender's Office, of Springfield, for appellant.

Jeffrey K. Davison, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and David E. Mannchen, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE McCULLOUGH delivered the opinion of the court:

The minor respondent, B.J.S., who was 12 years old, was charged with aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12—14(b)(2)) and aggravated criminal sexual abuse (Ill. Rev. Stat. 1985, ch. 38, par. 12—16(c)(2)) in a petition for adjudication of wardship filed by the State. The case proceeded to trial and at the close of the State's case in chief, the court dismissed count I, which alleged criminal sexual assault. On July 2, 1986, respondent was adjudicated a delinquent minor and was subsequently made a ward of the court and sentenced to 6 months' probation with the condition that he attend the R.B. King Sexual Assault Center.

On appeal, the respondent contends that: (1) the evidence presented at trial failed to prove respondent guilty beyond a reasonable doubt of aggravated criminal sexual abuse; (2) the trial court erred in excluding testimony of one witness regarding the truthfulness of another witness. We find insufficient evidence to support the court's finding and consequently reverse.

The following facts were adduced at the adjudicatory hearing. On May 10, 1986, the respondent was living in the same house with his 14-year-old stepsister, Jody; his stepbrothers, Gary and Billy; his sister, Joleen; his mother, Rita; his stepfather, Bill; Carl Campbell; and his half sister, the victim. They lived in a two-story house with a basement. The respondent's bedroom was located in the basement; the victim's bedroom was located on the second floor. During the evening of May 10, 1986, the children's parents were not home.

Jody testified that on the evening of May 10, 1986, she was at home baby-sitting for the victim and Joleen. Jody stated that she put the victim to bed between 9 and 10 p.m. that evening. Between 11 and 12 p.m., Jody was in the living room, on the first floor, when she heard the victim say, "Don't touch me, [respondent]." Jody testified that she went upstairs to the victim's bedroom, but the respondent was not there. Jody then asked the victim where the respondent had touched her, and the victim pointed to her vagina.

Jody then took the victim downstairs to the living room and put her to sleep on the living-room floor. Jody stated that she remained in the living room. The victim awakened a second time and repeated, "Don't touch me, [respondent]." Jody again asked the victim where the respondent had touched her, and the victim again pointed to her vagina. The victim first told Jody that the respondent had touched her with a baseball bat. The victim later stated that the respondent had touched her with his finger.

Jody further testified that during the evening of May 10, 1986,

she never saw the respondent go from the basement, through the first floor where she was, and upstairs to the victim's bedroom. Jody further stated that she did see the respondent go to the basement. He returned to the first floor once to get a drink of water and then went back downstairs.

Jody stated that sometime during 1986, but prior to May 10, 1986, she had seen the respondent and the victim together in the garage. Jody stated that when she walked into the garage, she saw the victim pulling up her pants and the respondent zipping his pants. Jody asked the respondent what he was doing and the respondent told her that he was urinating. Jody, however, stated that she never saw the respondent touch the victim.

Next, the State called Dr. Jamie Warnick, who testified that she is a pediatrician who completed her residency in pediatrics approximately one year prior to the hearing. Dr. Warnick testified that the victim had been admitted to St. Mary's Hospital during the evening of May 11, 1986. Dr. Warnick examined the victim on the morning of May 12, 1986, about 12 hours after she had been admitted. Dr. Warnick first questioned the victim about what had occurred. The victim pointed to her vagina and said that "one of her brothers" had touched her there.

Dr. Warnick examined the victim's genital area noting that she had no lacerations, bruising, or acute trauma. The victim had no hymen intact and her vaginal orifice appeared somewhat larger than that of other 3-year-old children the doctor had examined.

The doctor testified that she could attribute no significance to the absence of a hymen in the victim, since only 50% to 60% of 3-year-olds have an intact hymen, while 40% to 50% have a partial hymen or no hymen. Dr. Warnick did not know what percentage of 3-year-olds have no hymen or an enlarged vagina, but guessed it was probably less than 10%.

Dr. Warnick testified that the absence of a hymen does not necessarily indicate sexual abuse because it may be caused by strain or excessive play. Similarly, an enlarged vagina does not necessarily indicate sexual abuse because it may have a genetic cause. In response to the assistant State's Attorney's question as to whether an enlarged vagina would be consistent with sexual activity in the present case, Dr. Warnick testified, "in light of what the child told me, I felt—yes."

The State next attempted to qualify the victim, who was 3 years old, as a witness but the judge found that she was not competent to testify.

The court then granted respondent's motion for a directed verdict

as to count I. The court stated that there had been sufficient corroborating evidence as to count II.

Respondent then testified that during the evening of May 10 or 11, 1986, he was in the basement asleep. He stated that he did not hear the victim wake up or shout out. The respondent further testified that he had never been in a garage or barn alone with the victim, although he has urinated in the garage while alone.

The respondent testified that on another occasion he was playing outside with his brother and they told the victim that they were going to hit her with a baseball bat. The victim, however, did not appear scared. The respondent denied ever touching the victim in the vaginal area.

Billie Lee Speagle, the respondent's stepfather and Jody's father, testified on the respondent's behalf as to why the victim might have told Jody that the respondent touched her. He stated that he believed it had something to do with a similar case against another son a year ago that the court never settled. The respondent's attorney then asked Mr. Speagle, "Now your daughter Jody, is she a truthful daughter or have you found ***." The assistant State's Attorney objected to the question and the trial court sustained the objection.

Rita Speagle, the respondent's and the victim's mother and Jody's stepmother, testified regarding the victim's statements. She testified that the victim's story had constantly varied. One week prior to the hearing, the victim told Ms. Speagle that her brother Billy was the one that touched her with his finger. The victim also told Ms. Speagle that Jody told her to say it was the respondent rather than Billy.

After hearing closing arguments, the trial court adjudicated the respondent a delinquent minor. The trial court found that count II had been proved beyond a reasonable doubt. The court noted that Jody was a credible witness, although she had been found incredible in a prior case involving Jody and her brother. The court further stated that the testimony of Jody in conjunction with that of Dr. Warnick was sufficient to corroborate the allegations of sexual abuse.

Where a charge of delinquency is alleged pursuant to the Juvenile Court Act, the applicable standard of proof is beyond a reasonable doubt. (Ill. Rev. Stat. 1985, ch. 37, par. 704—6(1); *In re Gonzalez* (1981), 95 Ill. App. 3d 750, 420 N.E.2d 720.) A conviction for aggravated criminal sexual abuse, where the defendant denies the charge, will be upheld where there is corroboration of the testimony of the victim or that testimony is otherwise clear and convincing. (*People v. Leamons* (1984), 127 Ill. App. 3d 1056, 1066, 469 N.E.2d 1137, 1144-45.) Corroborating evidentiary matters include an eyewit-

ness account, confession or admission by the defendant, prompt reporting of the incident by the victim, or medical testimony which supports allegations of abuse. (127 Ill. App. 3d 1056, 469 N.E.2d 1137.) A reviewing court will not substitute its judgment for that of the trier of fact and reverse a conviction unless the evidence is so unsatisfactory or improbable that a reasonable doubt as to the defendant's guilt remains. *In re S.R.H.* (1983), 96 Ill. 2d 138, 145, 449 N.E.2d 129, 132.

In the case at hand, the victim was deemed incompetent to testify. Consequently, the allegations of sexual abuse must be sufficiently corroborated by evidence which demonstrates beyond a reasonable doubt that the respondent did commit the act charged.

Both the State and respondent dispute which incident was alleged in support of the charges of sexual abuse; the May 10 bedroom incident or the incident which occurred in the garage at some earlier date. Respondent maintains that the testimony of the garage incident was presented to corroborate the May 10 incident. On appeal, however, the State admits there was insufficient evidence to support allegations of sexual abuse occurring on May 10.

The State does maintain that the circumstances of May 10 provide sufficient corroboration of the incident which allegedly occurred in the garage as testified to by Jody. At trial, the court specifically referred to both incidents as corroborating the charges of sexual abuse. It cannot be determined by the record whether the trial court found sufficient evidence in support of either incident.

The only evidence presented in reference to the garage incident was the testimony of Jody, who made no statements as to any type of physical contact. The respondent denied ever being alone in the garage with the victim.

The remainder of the State's case included the testimony of Jody, who was baby-sitting when the May 10 incident occurred, and the testimony of Dr. Warnick. Jody saw the respondent go to the basement. Jody did not see the respondent go upstairs. Jody immediately responded to the victim's screams, and the respondent was nowhere near the victim. The State further presented Dr. Warnick, who examined the victim. Although Dr. Warnick did find some physical abnormalities in the victim which might be consistent with sexual abuse, she noted that these abnormalities could also be caused by other factors. There was never any evidence presented to directly link the respondent to the allegation charged.

■ The defense presented the testimony of the parents which cast considerable doubt on the credibility of the statements made by the victim. The mother specifically stated that the victim's story var-

ied constantly. Both the father and the trial court judge made reference to other cases pending involving the family which have no relevance to the case at hand. Since the State failed to demonstrate that the respondent was responsible for the allegations charged, the decision of the trial court cannot stand. We further find it unnecessary to address the respondent's second argument on appeal.

Reversed.

LUND and KNECHT, JJ., concur.