THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SAMUEL MORTON, Defendant-Appellant.

Fourth District    No. 4—88—0639

Opinion filed September 14, 1989.—Rehearing denied October 12, 1989.

Samuel J. Cahnman, of Springfield, for appellant.

Donald M. Cadagin, State's Attorney, of Springfield (Kenneth R. Boyle, Robert J. Biderman, and Rebecca L. White, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

The principal issue in this case concerns application of the statutory exception to the hearsay rule involving evidence of complaints of children as to unlawful sexual acts perpetrated upon them. In prosecutions for certain sexual acts, section 115—10(a)(2) of the Code of Criminal Procedure of 1963 (Code) effective January 1, 1988, permits, under stated conditions, admission into evidence of an "out of court statement made by [a victim of such an act who is less than 13 years of age] describing any complaint of such act or matter *or detail pertaining to any act* which is an *element* of an offense which is the subject of a prosecution." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 38, par. 115—10(a)(2).) Under court interpretation of prior statutes, the witness was not permitted to testify as to the details of the sexual act or the identification of the perpetrator of the act as related by the victim. *(People*

*v. Bradley* (1988), 172 Ill. App. 3d 545, 526 N.E.2d 916; *People v. Server* (1986), 148 Ill. App. 3d 888, 499 N.E.2d 1019, *cert. denied* (1987), 484 U.S. 842, 98 L. Ed. 2d 88, 108 S. Ct. 131; *People v. Leamons* (1984), 127 Ill. App. 3d 1056, 469 N.E.2d 1137.) The most significant question here is whether the present section 115—10(a)(2) permits evidence of those details of acts which are elements of the offense and that identification. We hold that it does.

On June 3, 1988, following a jury trial in the circuit court of Sangamon County, defendant Samuel R. Morton was convicted of two counts of aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(b)(1)) of his eight-year-old son J.M. in that he knowingly committed an act of sexual penetration by placing his penis in the anus of his son. One act was alleged to have taken place on August 19, 1987. By the State's answer to a request for a bill of particulars, the time of the other act was limited to the period from May 1, 1987, to July 15, 1987. A charge alleging he also placed his penis in the mouth of his son was later dismissed by the State. He was subsequently sentenced to a term of nine years' imprisonment on each count to run concurrently.

On appeal defendant maintains (1) his guilt was not proved beyond a reasonable doubt; (2) the court erred in admitting testimony of Nancy Roncancio, an investigator for the Department of Children and Family Services, and Dave Shaneman, a Sangamon County deputy sheriff, in regard to statements made to them by J.M. concerning acts of defendant upon which the charges against defendant were based; (3) the court also erred in admitting testimony of Jeanne Hamilton, a counsellor, as to damaging admissions defendant had made to her during counselling; (4) defendant was entitled to a mistrial; and (5) the court considered improper matters in imposing sentence and abused its discretion in imposing a term of nine years' imprisonment. We affirm.

The most important prosecution evidence was the testimony of J.M. After examination by court and counsel, he was found competent to testify. He then said: (1) he was eight years old; (2) he had been to the Rape Information and Counseling Center (RICS) in August of 1987 and told a secret; (3) the secret was that his father (defendant) had "stuck his penis into my butt"; (4) the incident had occurred the day before he had been to the center while J.M. was preparing to take a bath; (5) he had his clothes "halfway" off when his father entered the bathroom; (6) after the act, J.M. wiped "white sticky stuff" from his bottom and got into the bathtub; (7) afterwards, J.M. would go into his bedroom, place a toy chest in front of the door and take a nap; and (8) it hurt him "a little."

J.M. also testified (1) the foregoing conduct of his father had occurred before and had been continuing periodically for over a year; (2) on occasion, his father would put his penis into J.M.'s mouth, usually in the back of defendant's van; (3) his father told him if he told this secret, he would punish him; and (4) he previously had trouble controlling his bowel movements, but he did not have that problem after his father moved out in August 1987. On cross-examination, J.M. testified that he had attended counseling weekly since August of 1987 and had discussed his testimony numerous times.

Nancy Roncancio then testified: (1) she was an investigator for the Department of Children and Family Services (DCFS); (2) on August 20, 1987, she investigated a report of child abuse concerning J.M.; (3) on that date, she went to the RICS office and spoke with J.M.; (4) J.M. told her that his father had put his penis in J.M.'s mouth and bottom and drew a picture of his dad and himself with an arrow pointing from his dad's penis to J.M.'s bottom; (5) J.M. indicated on a marker the depth of penetration and the approximate color of the "white sticky stuff"; (6) J.M. told her the "stuff" got on his bottom and his underwear and that the acts would occur in the bathroom most of the time except for once when it happened in his bedroom; (7) she and Deputy Shaneman went to defendant's home to search for the nude photographs of J.M. that he had told them his father had taken of him, but they were unable to find any; (8) she then went to the hospital where J.M. was being examined; and (9) the exam revealed no physical evidence of abuse.

Shaneman testified he talked to J.M. at the RICS office on August 20, 1987, and was told by J.M. that after defendant had sex with him, he often soiled his underwear. Shaneman stated he then searched the Morton residence for J.M.'s underwear but was unable to find any with evidence of feces, semen, hair, or blood on it. William Frank, a forensic scientist with the Illinois State Police, testified that he analyzed two pair of underwear taken in the search of defendant's house, and both were negative for semen and blood.

Jeanne Hamilton, an employee counselor at St. John's Hospital, where defendant had previously worked, testified for the State. She explained defendant had come to see her, appearing visibly very upset. According to Hamilton, in the course of a 40- to 45-minute conversation, defendant told her a possibility existed he may have committed an act of sexual molestation but if he had done so, he did not remember it.

Defendant testified, in his own behalf, denying any acts of sexual abuse. He also denied making any statement to Hamilton that a possibility existed he might have committed the offense but did not remem-

ber doing so. This latter denial was supported by a stipulation that an investigator for defendant's attorney would testify that he interviewed Hamilton and made notes and his notes do not indicate Hamilton told him defendant made the statement concerning the possibility he committed the offense but could not remember. Defendant's brother and sister both testified at trial that they had taken care of J.M. on numerous occasions, and that they had not noticed any marks or bruises on his body. Defendant's sister also said she did not notice any changes in J.M.'s moods or behavior.

Defendant's theory that the prosecution's proof was insufficient is based largely upon the rule that in sexual abuse cases, where, as here, the accused denies commission of the offense, in order to support a conviction, the testimony of the victim must be corroborated or be clear and convincing. (*In re B.J.S.* (1987), 151 Ill. App. 3d 1023, 503 N.E.2d 1198.) Here, the testimony of J.M. is corroborated if the testimony of Roncancio and Hamilton is admissible because J.M.'s complaints corroborate his testimony at trial, as does Hamilton's testimony of defendant's admission. As we later explain, we hold this testimony was admissible. Corroboration is not dependent on the testimony of Shaneman.

As defendant correctly points out, no physical evidence of his guilt was produced, and substantial evidence indicated J.M. was coached concerning his testimony. In addition, some inconsistency existed in (1) J.M.'s testimony as to the frequency of the sexual acts; (2) his testimony about some nude pictures which he said his father took of him; and (3) his testimony concerning whether he put his toy chest in front of his bedroom door to keep his father out. The failure of Shaneman to find any evidence of the offense in J.M.'s underwear the day after the last alleged occurrence was also of some significance. However, testimony of a young victim does not have to be perfect to be clear and convincing. (*People v. Sexton* (1987), 162 Ill. App. 3d 607, 515 N.E.2d 1359.) More particularly, failure of the child witness to remember dates does not render the testimony unclear as a matter of law. (*Sexton*, 162 Ill. App. 3d at 612, 515 N.E.2d 1363.) In any event, because of the corroborating evidence here, we need not decide whether J.M.'s testimony here was clear and convincing.

■ J.M.'s testimony, together with the corroborating testimony of other witnesses, was sufficient to enable a reasonable jury to conclude each element of defendant's guilt of each offense was proved beyond a reasonable doubt. *Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781; *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

The defense contention that the testimony of Roncancio and Shaneman was inadmissible is based on his contention that (1) their testimony in regard to the complaints made to them of the sexual acts of defendant was improper because they both included J.M.'s report of the details of defendant's acts and named him as the perpetrator of those acts; (2) in regard to Shaneman, no hearing was held pursuant to section 115—10(b)(1) of the Code (Ill. Rev. Stat. 1987, ch. 38, par. 115—10(b)(1)); and (3) both witnesses testified to statements J.M. made after extensive questioning.

The first question concerning the propriety of the testimony of Roncancio and Shaneman is that which we have previously indicated to be the most important issue in the case. It involves the corroborative complaint hearsay exception of section 115—10 of the Code. Testimony by a witness as to something told to the witness by another is hearsay if the testimony is offered to prove the truth of the matter asserted. (*People v. Carpenter* (1963), 28 Ill. 2d 116, 190 N.E.2d 738.) Here, the testimony of Roncancio and Shaneman as to what J.M. told them defendant did was hearsay when it was offered to prove that defendant did, in fact, do those things.

Prior to the enactment of legislation making admissible evidence of complaints by victims of sex offenses, a common law exception to the hearsay rule existed in regard to complaints made promptly after the offense by rape victims. However, the portion of the complaint which gave the details of the offense and named the perpetrator was inadmissible. (*People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25.) Section 115—10 of the Code was enacted effective January 1, 1983. It was subsequently amended, effective February 1, 1983, to state:

"In a prosecution for a sexual act perpetrated upon a child under the age of 12, including but not limited to prosecutions for violations of Sections 11—1 through 11—5 of the Criminal Code of 1961, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child that he or she complained of such act to another; and

(2) testimony by the person to whom the child complained that such complaint was made in order to corroborate the child's testimony." Ill. Rev. Stat. 1983, ch. 38, par. 115—10.

In *People v. Leamons* (1984), 127 Ill. App. 3d 1056, 469 N.E.2d 1137, this court interpreted the purpose of then section 115—10 of the Code to extend the common law corroborative complaint doctrine to complaints of young victims of sexual offenses other than rape. Accordingly, this court held that portions of such complaints which gave

details of the offense or identified the offender were inadmissible. However, by drawing analogy to the holding in *People v. Robinson* (1978), 73 Ill. 2d 192, 383 N.E.2d 164, we held that error in the admission of testimony of details and of identification in corroborative complaints under section 115—10 of the Code was harmless if (1) every detail stated in the testimony of the complaint was corroborated by the victim's testimony at trial; and (2) the defense had an opportunity to cross-examine the victim who made the complaint. In *Robinson*, the supreme court had set forth a similar rule in regard to application of the common law corroborative complaint rule in rape cases.

In *People v. Server* (1986), 148 Ill. App. 3d 888, 499 N.E.2d 1019, this court followed *Leamons* and *Robinson* in holding, under similar circumstances, error in the admission of section 115—10 corroborative complaint testimony was harmless although details of the offense were recited and the offender's name was given. On the other hand, where the violations of the *Leamons* requirements were gross, this court reversed a conviction in *People v. Bradley* (1988), 172 Ill. App. 3d 545, 526 N.E.2d 916. During the period covered by *Leamons*, *Server*, and *Bradley*, section 115—10 of the Code remained in substantially the same form.

Effective January 1, 1988, section 115—10 of the Code was amended to state:

"(a) In a prosecution for a sexual act perpetrated upon a child under the age of 13, including but not limited to prosecutions for violations of Sections 12—13 through 12—16 of the Criminal Code of 1961, the following evidence shall be admitted as an exception to the hearsay rule:

(1) testimony by such child of an out of court statement made by such child that he or she complained of such act to another; and

(2) testimony of an out of court statement made by such child *describing any complaint of such act or matter or detail pertaining to any act* which is an *element* of an offense which is the subject of a prosecution for a sexual act perpetrated upon a child.

(b) Such testimony shall only be admitted if:

(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child either:

(A) Testifies at the proceeding; or

(B) Is unavailable as a witness and there is corroborative evi-

dence of the act which is the subject of the statement.

(c) If a statement is admitted pursuant to this Section, the court shall instruct the jury that it is for the jury to determine the weight and credibility to be given the statement and that, in making the determination, it shall consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, and any other relevant factor.

(d) The proponent of the statement shall give the adverse party reasonable notice of his intention to offer the statement and the particulars of the statement." (Emphasis added.) Ill. Rev. Stat. 1987, ch. 38, par. 115—10.

As section 115—10 of the Code concerned procedure at the trial which occurred in 1988, the new version of section 115—10 determined the admissibility of evidence of corroborative complaints by J.M. in this case. (*People v. Ruiz* (1985), 107 Ill. 2d 19, 479 N.E.2d 922.) As section 115—10(a)(2) speaks of testimony of a statement which describes "any *** detail pertaining to any act which is an element" of a sexual offense (Ill. Rev. Stat. 1987, ch. 38, par. 115—10(a)(2)), the question arises as to whether the legislature has changed the rule that testimony of corroborative complaints by a victim cannot include recitation of the details of the offense or the identification of the offender. Defendant maintains the reference to "any detail of an act which is an 'element' of the offense" is for the purpose of recognizing the rule of *Robinson, Leamons, Server*, and others whereby the recitation of details is harmless error if the conditions required in those cases are met. We do not agree.

■ New section 115—10 of the Code does resemble the rule of *Robinson, Leamons*, and *Server*, rendering error in the admission of corroborative complaints of child victims of sex offenses harmless, to the extent new section 115—10(b)(2) requires the child to testify if available. However, section 115—10 does not require that *every detail* recited be corroborated by the child's testimony at trial. Rather than being a restatement of existing case law, we conclude the new section 115—10 is intended to be, and is, a comprehensive, well-considered statement of the circumstances under which hearsay evidence of the statement of child victims of sex offense may be admitted in criminal proceedings for the purpose of prosecuting those accused of such offenses.

The previously cited language of section 115—10(a)(2) which provides for the admissibility of "testimony of an out of court statement made by such child describing any complaint of such act or matter or

*detail* pertaining to any act which is an element of an offense" (emphasis added) means just what it says (Ill. Rev. Stat. 1987, ch. 38, par. 115—10(a)(2)). If the conditions of section 115—10(b) are met, a *"detail"* of a corroborative complaint by the child may be related by a witness to the child's statement of the complaint. Clearly, an identification of the perpetrator of an "act" is a "detail pertaining" to that act.

An intent upon the part of the legislature to clarify and modify the rules in regard to the admission of the type of evidence involved here seems logical. In the vast majority of cases where a corroborative complaint of a child victim of a sex offense is offered, that child will have testified in detail and been subject to cross-examination. Thus, the rule against recitation of identification and other details has largely become engulfed by the rule rendering the violation of the rule harmless error. Furthermore, the recitation of some of the details of acts which are elements of the offense and matter, at least implying the identity of the perpetrator, was very likely to be required to make sense of testimony. Section 115—10(b) sets forth reasonable conditions for the safeguard of the reliability of the evidence.

The testimony of Roncancio was supported by full compliance with the requirements of section 115—10(b) of the Code. A hearing was held out of the presence of the jury and evidence showed the circumstances existing safeguarded the reliability of the hearsay she (Roncancio) related. The child testified at the proceeding. Accordingly, no error arose because Roncancio related the portion of J.M.'s statement to her which stated the details of the offenses and identified defendant as the person J.M. said committed those offenses.

Shaneman's testimony was not supported by full compliance with section 115—10(b) of the Code. The circuit court refused defendant's request that a hearing be held pursuant to section 115—10(b)(1) of the Code to determine whether the circumstances indicated a sufficient reliability could be attached to J.M.'s purported statement to Shaneman. Thus, admission of this testimony was error. However, the only significant statement of J.M. that Shaneman testified about was J.M.'s statement that after defendant sexually abused him he often soiled his underwear. J.M. did testify directly that this did occur. Considering this direct testimony and the fact only one significant statement of J.M.'s was related, we conclude the error was harmless.

Defendant also maintains the testimony of Roncancio and Shaneman concerning complaints made to them by J.M. was inadmissible because J.M.'s statements occurred during and after extensive questioning by those witnesses. Defendant relies on *People v. Taylor* (1971), 48 Ill. 2d 91, 268 N.E.2d 865. There, the supreme court reversed a convic-

tion for rape and deviate sexual assault. That court held reversible error resulted from admission of testimony of a witness concerning statements made to the witness by the victim. The evidence indicated the victim, after being let out of an automobile driven by the accused, walked a short distance to a fire station where she asked the witness if she could use a telephone. The witness asked the victim if he could help her, but she said she merely wanted to call the police. The witness thought the victim appeared nervous and, accordingly, asked again if he could help, but she refused help. After the phone call was completed, the victim told the witness she had been raped. The supreme court held that the questioning spoiled any spontaneity in the victim's complaint, and thus the complaint was inadmissible as either a spontaneous declaration or a prompt complaint. The *Damen* case was cited.

■ Later, in *Server*, this court held "[t]he fact that a complaint [by a victim was] made in response to questions does not necessarily destroy its admissibility under *** section 115—10." (*Server*, 148 Ill. App. 3d at 900, 499 N.E.2d at 1028.) Cited there were cases where testimony of police officers, nurses, and social workers of statements of victims of sex crimes had been considered even though the statements resulted from questioning. Those were cases where the opinions do not indicate any objection was made to the fact that the corroborative complaints resulted from questioning. (*In re R.D.* (1985), 131 Ill. App. 3d 612, 476 N.E.2d 62; *People v. Powell* (1985), 138 Ill. App. 3d 150, 485 N.E.2d 560; *People v. Salas* (1985), 138 Ill. App. 3d 48, 485 N.E.2d 596.) Nevertheless, we consider the reasoning of *Server* to be sound. At the time of *Taylor*, the focus in determining reliability of the statement of a victim was placed upon the spontaneity of the hearsay statement even though the reviewing courts recognized that the doctrines of a corroborative complaint and a spontaneous declaration were not entirely the same. Section 115—10 of the Code is applicable only when the declarant is a child, and the focus is on the fact a child would be unlikely to fabricate rather than that the declarant would be likely to be truthful only if the information is volunteered. The testimony of Roncancio and Shaneman as to J.M.'s statement was not rendered inadmissible because the statements were made as a result of questioning.

Thus, no reversible error resulted from the testimony of Roncancio and Shaneman.

Defendant's complaint that Jeanne Hamilton, the St. John's counselor with whom he conferred, should not have been permitted to testify as to admissions he made to her is based upon the provisions of section 10(a) of the Mental Health and Developmental Disabilities Con-

fidentiality Act (Confidentiality Act) (Ill. Rev. Stat. 1987, ch. 91½, par. 801 *et seq.*), which states that, except as therein provided, "therapists" and "recipients" have "the privilege to refuse to disclose and to prevent the disclosure of the recipient's record or communications" in court proceedings and before various other situations. (Ill. Rev. Stat. 1987, ch. 91½, par. 810(a).) The term "therapist" includes social workers (Ill. Rev. Stat. 1987, ch. 91½, par. 802(9)) and the word "recipient" includes a person receiving mental health services (Ill. Rev. Stat. 1987, ch. 91½, par. 802(6)). However, section 4 of the Abused and Neglected Child Reporting Act (Reporting Act) requires a wide variety of people involved in providing various types of health and social services, including social workers, to report suspected cases of child neglect or abuse to the Illinois Department of Children and Family Services. (Ill. Rev. Stat. 1987, ch. 23, par. 2054.) Section 4 further states in part:

"The privileged quality of communication between any professional person required to report and his patient or client shall not apply to situations involving abused or neglected children and shall not constitute grounds for failure to report as required by this Act." Ill. Rev. Stat. 1987, ch. 23, par. 2054.

In *People v. McKean* (1981), 94 Ill. App. 3d 502, 418 N.E.2d 1130, the court rejected the contention of an accused that his constitutional rights were violated prior to his arrest when a social worker of the Department of Children and Family Services had revealed information he gave her concerning his acts of aggravated incest for which he was charged and convicted. The appellate court affirmed the conviction, holding that the social worker properly revealed the information pursuant to the previously cited provisions of section 4 of the Reporting Act. The court stated:

"Under the statute *** *not only* was *any* communication *privilege that might exist between the defendant and [the social worker] inapplicable* but *also* [he] had an affirmative duty to report the defendant's conduct ***." McKean*, 94 Ill. App. 3d at 505, 418 N.E.2d at 1133.

This court, in *People v. Bradley* (1984), 128 Ill. App. 3d 372, 470 N.E.2d 1121, held the cited provisions of section 4 of the Reporting Act defeated the contention of a defendant convicted of taking indecent liberties with a child that admission into evidence of incriminating statements he had made to a social worker violated his privilege against self-incrimination. Apparently, the social worker had informed the defendant their conversation would be confidential. This court relied on the statement in *McKean* that under section 4 of the Reporting Act no privileged communication between the social worker and the

defendant could exist as to matters involving child abuse.

■■ Defendant maintains that the confidentiality created under section 10 of the Confidentiality Act concerns a confidentiality in regard to testimony in court or other proceedings, while section 4 of the Reporting Act is focused upon reports to be made to the Department of Children and Family Services. He points out that the decision in *McKean* involved a report made to authorities and not to testimony given in court. Defendant contends that *Bradley* was improperly decided. Defendant makes a conceivable argument. However, as stated in *McKean*, and adopted by the court in *Bradley*, the express language of section 4 of the Reporting Act provided both for the creation of a duty upon the social worker to report child abuse and also to negate any privilege to the communication between the parties. *Bradley*, 128 Ill. App. 3d at 381, 470 N.E.2d at 707-08.

The obvious purpose of a confidentiality between therapists and recipients is to encourage the recipients to speak freely so that the therapist will have accurate information to use in deciding on treatment. Here, the undisputed evidence showed that the recipient was advised the conversation would *not be confidential*. If the statutory format is, as defendant argues, that the conversation here was confidential as far as use in subsequent court proceedings but that the therapist would be required to report the conversation to the Department of Children and Family Services, the incentive for a person who has committed child abuse to speak accurately has been virtually eliminated anyway. Those who would speak truthfully would be those like the defendant who were emotionally compelled to seek advice even if no confidentiality existed.

We conclude, as indicated in *McKean* and *Bradley*, the express language of section 4 of the Reporting Act destroys any confidentiality for use in a criminal prosecution for child abuse to information given by an accused to a therapist under the circumstances here. The court properly admitted Hamilton's testimony.

Defendant's final contention bearing upon his conviction concerns the circuit court's denial of his motion for a mistrial made during the course of trial. It was made in response to testimony by defendant's former wife that defendant was reluctant to take J.M. to RICS the first two times he went there. Defendant objected and stated, out of the jury's presence, that his initial reluctance to take J.M. and his sister to RICS related to an alleged sexual abuse of J.M.'s sister by an older cousin. He then asked for a mistrial on the basis that he could not explain this reluctance without going into details of the abuse against J.M.'s sister. The court sustained the objection, and instructed

the jury to disregard the answer, but denied the motion for mistrial. Defendant now argues the jury could have inferred the testimony related to other sexual crimes against J.M. which would be discovered at RICS. Defendant notes that during deliberations, the jury sent a note to the judge asking if it would "have been admissible for us to know the original reason [J.M.] was taken to RICS. If admissible, why was it not brought out[?]"

■ As the matter turned out, defendant probably was somewhat prejudiced by the episode. However, the evidence of defendant's reluctance to take J.M. to RICS had some tendency to show a guilty mind on defendant's part. The State cannot be faulted for offering the evidence, and defendant cannot complain of the court's action in sustaining objection to the evidence. The only alternative for the court to follow would have been to let the evidence come in and for defendant to put on evidence indicating his reluctance was for another reason. In any event, the prejudice to defendant was not great, and the court did not abuse its discretion in denying a mistrial.

■ Finally, defendant argues the trial court was unduly swayed by the victim-impact statement prepared by defendant's ex-wife, the victim's mother. Defendant notes the United States Supreme Court recently announced that sentencing decisions would be based on the characteristics and record of the defendant and circumstances of the crime, not the emotional impact of the crime on the victim's family. (*Booth v. Maryland* (1987), 482 U.S. 496, 96 L. Ed. 2d 440, 107 S. Ct. 2529.) However, this court noted that *Booth* applied only when the death penalty was in issue and that the victim-impact statement may properly be considered. *People v. Hines* (1988), 165 Ill. App. 3d 289, 303, 518 N.E.2d 1362, 1371, *cert. denied* (1988), 488 U.S. 895, 102 L. Ed. 2d 226, 109 S. Ct. 236.

Moreover, the trial court here indicated it would not consider the victim-impact statements of the victim's sister or the statements of the victim's mother as to the effect the defendant's actions had on her, since she was not the victim. Also, the trial court has substantial discretion to sentence, and where the sentence is within the statutory limits, it will not be disturbed on appeal. *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.

As we have indicated, we affirm.

Affirmed.

McCULLOUGH, P.J., and SPITZ, J., concur.